IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT HALL,

        Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

_____

Civ. No. 6:15-cv-00235-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Scott Hall brings this action for judicial review of the Commissioner's decision denying his application for supplemental security income ("SSI"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On May 25, 2011, Hall filed an application for SSI, alleging disability as of January 2, 1987. After a hearing, the administrative law judge ("ALJ") determined Hall was not disabled under the Social Security Act from May 25, 2011 through October 25, 2013. Tr. 20-21.[1] Hall argues the ALJ erred in finding Hall failed to overcome the continued presumption of nondisability under *Chavez v. Brown*, 844 F.2d 691 (9th Cir. 1988), in finding Hall less-than credible, and in rejecting the opinion of a treating physician. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

_____

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

2 – OPINION AND ORDER

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Before filing the application for benefits challenged here, Hall filed an earlier application for benefits on February 25, 2008. When Hall filed the first claim, he was a "younger individual" under the regulations.[2] On November 25, 2009, the ALJ presiding over Hall's first claim concluded Hall was not disabled from the date of filing through November 25, 2009. Tr. 70-71. By the time of the hearing in Hall's first claim, Hall was no longer a "younger individual," but a "person closely approaching advanced age." At that hearing, the ALJ asked the vocational expert ("VE") whether Hall could perform work considering his residual functional capacity ("RFC") and age. Tr. 70. The VE concluded that given Hall's RFC and age, he could perform the jobs of hand packager and bottling line attendant. Tr. 70.

On October 25, 2013, the date the second ALJ found Hall not disabled, Hall remained a "person closely approaching advanced age." The second ALJ concluded that *Chavez* applied because the second claim involved the same age category (a "person closely approaching advanced age") without any change of circumstances indicating a greater disability than in the first claim. Tr. 11. The second ALJ concluded Hall failed to rebut the presumption of continuing nondisability under *Chavez*. Tr. 11.

*Chavez* discussed *res judicata* in administrative hearings. 844 F.2d at 693. In the social security context, a claimant can "overcome the presumption of continuing nondisability" from the first claim only by demonstrating "changed circumstances" in the second claim. *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). A claimant can overcome the *Chavez* presumption by showing a change in age status or a greater disability than present in the first

---

[2] A younger individual is anyone under age 50. 20 C.F.R. § 416.963(c). One aged 50-54 is a "person closely approaching advanced age." *Id.* at (d). A "person of advanced age" is one aged 55 and older. *Id.* at (e).

claim. *Id.* The greater disability aspect makes perfect sense; a claimant paralyzed one week after an adverse decision is not barred under *res judicata* from obtaining benefits via a second claim. Likewise, a change in age status can be outcome determinative under the "grids." *Id.* (noting that under the grid for light work, an individual of "advanced age" without transferrable skills can be disabled while a similar individual not of "advanced age" is not disabled). Absent "changed circumstances," the findings and conclusions of the first ALJ are binding on the second. *Id.* at 694.

The second ALJ noted that the first ALJ found Hall not disabled as of November 25, 2009. Tr. 11 (citing Tr. 70-71). Hall concedes that on November 25, 2009, he was a "person closely approaching advanced age." Because Hall remained a "person closely approaching advanced age" at the time of the second ALJ's written decision, Hall cannot demonstrate a change in age status. Hall's argument to the contrary is meritless. Hall is correct that the first ALJ pointed out that at the time Hall filed the first claim, he was a "younger individual." But by the time of the first hearing, when the ALJ questioned the VE about a person with Hall's age and RFC, Hall already advanced to a "person closely approaching advanced age."[3] While Hall's age status changed between the filing of the two claims, that fact is irrelevant. *Res judicata* makes binding the first ALJ's findings and conclusions. Here, the first ALJ found Hall not disabled as of November 25, 2009, when Hall was a "person closely approaching advanced age." There is no change in age status.

Hall also argues that *Chavez* is inapplicable because he demonstrated greater limitations than present at the time of the first ALJ's decision. While Hall alleged greater limitations

---

[3] At the beginning of the second hearing, the ALJ stated "the second issue in this case is what we call a *Chavez* issue." Tr. 28. Nowhere during that hearing did Hall ever mention, let alone argue, that *Chavez* did not apply because the first ALJ erroneously considered Hall a "younger individual" at the time of the first written decision. Hall's brief here appears to be the first time he ever raised that argument against the *Chavez* presumption of nondisability.

however, the second ALJ's conclusion that Hall's back problems were neither new nor severe is supported by substantial evidence in the record. At the second hearing, Hall alleged back pain allowed him to sit and stand up to an hour at a time, and allowed him to walk only 20 minutes before needing to sit down. Tr. 43-44. Back pain forced Hall to spend three to four hours per day lying down. Tr. 45. The ALJ found Hall's statements as to his limitations were not credible.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). The ALJ in this case supported his credibility determination with references to several of the above factors.

First, contrary to Hall's assertion at the second hearing that he broke his back after the first hearing, Hall actually broke his back two months before the first hearing, in August 2011. Tr. 361-65. At the ER, Hall already complained of past chronic back pain. Tr. 361. Nearly a year later, at Hall's disability examination, he suffered "only occasional back pain," when he "sits or lies wrong." Tr. 286. Hall sat comfortably during that examination, had no difficulty getting on or off the examining table, and the examining physician concluded Hall had no physical limitations. Tr. 286-90. The diagnosis was a "normal exam" and Hall had "totally nontender

thoracic and lubrosacral spines." Tr. 289. Additionally, imaging of Hall's spine was normal. Tr. 291.

The second ALJ noted that as late as December 2011, Hall declined medication for back pain. Tr. 14. The ALJ concluded Hall's normal examinations and lack of follow up treatments stood in stark contrast to Hall's claim of needing to lie down three to four hours per day. Tr. 14. While some doctors commented on Hall's subjective claims of chronic lower back pain, they also categorized Hall's fractures as "a fairly minor injury."[4] Tr. 249. And despite concerns about narcotics, Hall did not regularly use non-narcotic options, such as ice or hot packs. Tr. 46. As of April 2011, Hall was doing light yard work, walking, and trying to stay active. Tr. 249.

The ALJ provided "specific, clear and convincing reasons" for rejecting Hall's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). The ALJ's conclusion that Hall's back pain is neither new nor severe is supported by substantial evidence in the record.

Hall also argues the ALJ failed to credit the opinion of Damon Tempey, Ph.D. The parties dispute whether Dr. Tempey is a treating or examining physician. Although the record supports the ALJ's conclusion that Dr. Tempey saw Hall on only two occasions, both times for an annual review of Hall's overall treatment plan, I assume here that Dr. Tempey was in fact a treating physician. Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When a treating physician's opinion is contradicted by another medical opinion, the ALJ may reject the opinion of a treating physician only by providing "specific and legitimate

---

[4] Of course there are different categories of fractures. While Hall suffered transverse process fractures from L1 to L5, there was no internal damage of spleen or liver or free peritoneal fluid. Tr. 362. Hall's fractures were stable in terms of neurologic function. Tr. 362. Hall was discharged that day and received a note authorizing no work for 21 days. Tr. 363. While Hall made subjective reports of pain increasing around 18 months after the fall, the objective record and examinations indicate Hall had a normal recovery from the fall.

reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

In June 2013, Dr. Tempey completed a mental RFC assessment for Hall. Tr. 352-55. The assessment defined "moderately severe" limitations as one which "seriously interferes with the individual's ability to function," precluding the individual from performing full-time work on a regular and sustained basis. Tr. 352. Dr. Tempey found Hall had "moderately severe" limitations in two categories: the ability to maintain attention and concentration for extended periods; and the ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 353-54. The ALJ rejected Dr. Tempey's two "moderately severe" limitations. Tr. 18.

The ALJ noted that Dr. Tempey's restrictions were at odds with substantial evidence in the record indicating Hall's mental symptoms were adequately controlled with medication. This conclusion is certainly supported by the record. Importantly, Dr. Tempey's own notes indicate that while Hall suffers occasional problems related to impulse control, he generally "does well on medication (Strattera) for his A.D.H.D." Tr. 355. Dr. Tempey's own notes are inconsistent with his moderately severe limitation opinions.

The ALJ gave more weight to Ben Newman, a prescribing nurse practitioner ("NP"). The ALJ noted that while Dr. Tempey had infrequent interactions with Hall, NP Newman was Hall's most frequent mental health provider. NP Newman's notes indicate Strattera effectively controlled Hall's symptoms.

In June 2011, Hall told NP Newman that Strattera helped "a good deal with his focus and attention . . . ." Tr. 227. Later, NP Newman noted Hall's report that Strattera helped him "focus fairly well when not stressed . . . ." Tr. 244. In late 2011, Hall told NP Newman that Straterra was "good. It's working wonderful," helping with focus with no side effects. Tr. 316. While the

Strattera's effectiveness could wax and wane, it generally alleviated Hall's symptoms. Tr. 317. In April, 2012, Hall told NP Newman "I'm doing good. I'm absolutely wonderful. This is the first medication that has helped me without turning on me." Tr. 318. Three months later, the Strattera remained "very helpful with his ADHD and not causing him any difficulties or problems with side effects. He is very pleased with it . . . ." Tr. 319. Three months later, in late 2012, Hall "reports the Strattera continues to work well. 'I don't have any more of those problems' and he denies any side effects." Tr. 320. In January 2013, Hall reported being able to focus and pay attention. Tr. 321. In April 2013, Hall told NP Newman the Straterra remained effective, helping him focus and pay attention. Tr. 323.

　　　NP Newman had a much more extensive history treating Hall than Dr. Tempey. NP Newman's reports, taken directly from Hall during numerous treating sessions, differ from Dr. Tempey's June 2013 opinion as to Hall's "moderately severe" limitations. Dr. Tempey's opinion also differed from that of examining physician Dr. Smyth. Dr. Smyth examined Hall on August 1, 2013. Tr. 374. Dr. Smyth had all of Hall's mental health notes, and his own notes from his own May 2, 2008 psychodiagntosic interview with Hall. Tr. 378. Dr. Smyth concluded Hall had no restrictions in his ability to understand, remember, and carry out instructions, and moderate restrictions in interacting with coworkers and supervisors. Tr. 394-95. The ALJ's decision that Dr. Smyth's opinion is entitled to great weight because it is consistent with the overall record (including NP Newman's notes) and Hall's history is supported by substantial evidence in the record. Although Hall argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

The ALJ's conclusion that Hall failed to rebut the continuing presumption of nondisability found in *Chavez* is free of legal error and supported by substantial evidence in the record. Additionally, even assuming Hall did rebut the *Chavez* presumption, the ALJ correctly determined that Hall is not disabled under § 204.00 of the "grids" because Hall had only nonexertional limitations. Tr. 20.

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 1st day of June, 2016.


_____/s/ Michael J. McShane _____
Michael McShane
United States District Judge

9 – OPINION AND ORDER